# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation, | : | Case No. 3:04 CV 7233 |
| Plaintiff, | : | |
| vs. | : | |
| Flagship Auto Center, Inc., *et al*., | : | MEMORANDUM DECISION AND ORDER |
| Defendants. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case seeking, *inter alia*, restitution and recovery on promissory notes pursuant to 12 U. S. C. § 1819. Plaintiff also alleged an illegal fraud/check kiting scheme by Defendants Flagship Auto Center (Flagship), Winkle Chevrolet-Olds-Pontiac (Winkle Chevrolet), Thomas J. Winkle (Winkle) and Steven L. Myers (Myers). Pending are Defendant Pamela Siegenthaler's Motion to Dismiss (Docket No. 37), Plaintiff's Opposition (Docket No. 41) and Defendant Siegenthaler's Reply (Docket No. 42); Defendants Flagship Auto Center (Flagship) and Siegenthaler's Motion to Compel Discovery from the Federal Reserve Bank of Cleveland (Federal Reserve Bank) (Docket No. 43) and the Federal Reserve Bank's Opposition (Docket No. 48); Defendants Flagship and Siegenthaler's Motion to Compel Discovery from Plaintiff (Docket No. 44) and Plaintiff's Opposition (Docket No. 51); the Motion of the Board of Governors of the Federal Reserve System (Board of Governors) to Intervene as a party (Docket No. 46), Defendant Flagship's Opposition

(Docket No. 53) and the Board of Governor's Reply (Docket No. 59), the Federal Reserve Bank's Motion to Quash Subpoena Duces Tecum (Docket No. 48), Defendant Flagship's Opposition (Docket No. 54) and the Federal Reserve Bank's Response (Docket No. 61), Office of the Comptroller of Currency's (OCC) Motion for Leave to file an *Amicus Curiae* (Docket No. 65) and Flagship's Opposition (Docket No. 66).

For the reasons that follow, Defendant Siegenthaler's Motion to Dismiss (Docket No. 37) is denied, Defendants Flagship and Siegenthaler's Motion to Compel Discovery from the Federal Reserve Bank (Docket No. 43) is denied, Defendants Flagship and Siegenthaler's Motion to Compel Discovery from Plaintiff (Docket No. 44) is denied, the Board of Governor's Motion to Intervene (Docket No. 46) is denied as moot, the Federal Reserve Bank's Motion to Quash (Docket No. 48) is granted and the Comptroller of the Currency's Motion for leave to file an *Amicus Curiae* brief is denied as moot (Docket No. 65).

## THE PARTIES

Plaintiff Federal Deposit Insurance, a corporation that insures the deposits of all banks and savings associations, brings this action in its capacity as receiver of the Oakwood Depository Company (Oakwood) (Docket No. 1, ¶ 1); 12 U. S. C. § 1811 (a) (2005). Plaintiff's management is vested in a Board of Directors empowered to administer all of the corporate affairs and determine the manner in which all obligations are incurred and expenses are allowed and paid. 12 U. S. C. § 1812 (1) (2005); 12 U. S. C. § 1820(a) (2005). A bank or savings association may become an insured depository upon application and investigation by the corporation and approval by the Board of Directors. 12 U. S. C. § 1815 (a) (1) (2005).

Oakwood was a banking institution organized under the general laws of the State of Ohio having its principal place of business in Oakwood, Ohio (Docket No. 1, ¶ 2). Oakwood was insured by Plaintiff (Docket No. 1, ¶s 1, 2, 3). Mark Steven Miller was Oakwood Deposit's Chief Executive Officer and Executive Vice President (Docket No. 1, ¶ 34).

Federal reserve banks are charged by Congress with the authority to prevent and/or remedy unsafe banking practices and to ensure economic stability. 12 U. S. C. § 301 (2005). As a condition of membership in the federal reserve, member banks are subject to periodic inspections and examination. 12. U. S. C. § 301 (2005).

Defendant Flagship, formerly known as Flagship GM Center and Steve Myers Auto Sales, is an Ohio corporation that conducted business in Kenton, Ohio (Docket No. 1, ¶ 5). Defendant Myers was an officer and agent of Steve Myers' Auto Sales (Docket No. 1, ¶ 9).

Frederick Heifner, a majority stockholder in Steve Myers Auto Sales, replaced Steve Myers as President (Docket No. 1, ¶ 19). Frederick Heifner died during the pendency of this case and Defendant Pamela Siegenthaler was appointed as executrix of his estate (Docket No. 1, ¶ 6). Defendant Winkle Chevrolet-Olds-Pontiac (Winkle-Chevrolet) was an Ohio corporation that conducted business in Paulding Ohio. Defendant Winkle, a resident of Paulding, Ohio, was an officer and agent of Defendant Winkle-Chevrolet (Docket No. 1, ¶s 7, 8)[1].

The Board of Governors of the Federal Reserve Bank seeks leave to intervene in this action for

---

[1] Defendant Thomas K. Winkle was also the statutory agent for H & K Motor Sales, an Ohio corporation operating in Continental Ohio. H & K Motor Sales was dismissed with prejudice as a party Defendant on January 7, 2005 (Docket No. 35).

the limited purpose of opposing Defendants' Motion to Compel Documents from the Federal Reserve Bank of Cleveland (Docket No. 46, ¶ 1). The Board of Governors prescribes the rules and regulations under which a bank may become a stockholder of any Federal Reserve Bank, determines and prescribes the manner in which the Federal Reserve Bank incurs obligations and expenses and makes disbursements. 12 U. S. C. § 244 (2005); 12 U. S. C. § 321 (2005). The Board of Governors is authorized and empowered to examine the accounts and affairs of federal reserve banks and prepare a statement in detail of the bank's assets and liabilities. **FACTUAL BACKGROUND**.

The Complaint alleges that during 2001, Defendants Winkle and Myers engaged in a check kiting scheme which involved selling vehicles between Winkle-Chevrolet and Steve Myers dealerships (Docket No. 1, ¶s 14-16). Defendant Winkle Chevrolet had an account at Oakwood Deposit and Defendant Steve Myers Auto had an account at Liberty Bank (Docket No. 1, ¶ 17). Payments were made on vehicles not actually sold through the use of checks written on the Oakwood Deposit account at the direction of Defendant Winkle and checks written on the Liberty Bank account at the direction of Defendant Myers (Docket No. 1, ¶ 15). Checks drawn on the Liberty Bank account were deposited into the account at Oakwood Deposit. Before the check was presented for payment and cashed, however, checks were deposited at the account on which the check was drawn (Docket No. 1, ¶ 16). It is estimated that from January 2001 through November 2001, checks exceeding $140,000,000 were written on the two accounts and transactions between Oakwood Deposit and Liberty Bank accumulated $62 million per month (Docket No. 1, ¶s 17, 18).

During November 2001, Defendant Winkle deposited $1,963.818 in checks written on the Liberty Bank account into the Oakwood Deposit account. When Oakwood Deposit presented the checks for

payment, they were dishonored (Docket No. 1, ¶ 23). On November 23, 2001, Defendant Winkle deposited $939,216 in checks written on the Liberty Bank account. Again these checks were also dishonored (Docket No. 1, ¶ 24). As a result of Liberty Bank's failure to pay, Oakwood Deposit began returning checks submitted for payment as drawn on uncollected funds (Docket No. 1, ¶ 19). Steven Myers wrote checks totaling $8,054,264 that were deposited by Defendant Winkle in the Oakwood Deposit account. Such amounts were unpaid by Liberty Bank (Docket No. 1, ¶ 25). Oakwood Deposit presented the unpaid checks written by Defendant Winkle to Liberty Bank which paid $360,198 of the outstanding checks (Docket No. 1, ¶ 21). None of the checks written on the Oakwood Deposit account were returned unpaid upon presentment to Oakwood Deposit. Consequently, the proceeds from the paid checks were in the Liberty Account (Docket No. 1, ¶ 26). When the scheme was discovered, Defendant Steve Myers was replaced as president by Frederick Heifner and the Board of Directors changed the name of the Steve Myers Auto Sales to Flagship Auto Center (Docket No. 1, ¶s 19, 27). Frederick Heifner opened a new account at Liberty Bank from which he authorized transfers and loan repayments to various other accounts (Docket No. 1, ¶ 31). From his personal account at the Hardin County Bank, Frederick Heifner paid $523,997.13 to satisfy outstanding personal or business loans with Liberty Bank. Approximately ten days later, Frederick Heifner redeposited $523,997.13 in his personal account at Hardin County Bank (Docket No. 1, ¶s 31, 32).

On November 5, 2001, Oakwood lent Defendant Winkle $500,000 in his personal and official capacities. A balance of $490,000 remains unpaid on the note (Docket No. 1, ¶ 29). Defendant Winkle also obtained credit totaling $3,023,547.10 to cover, *inter alia*, account overdrafts and operating expenses (Docket No. 1, ¶ 34).

The Superintendent of Financial Institutions for the State of Ohio closed Oakwood on February 1, 2002 and appointed Plaintiff as a receiver pursuant to 12 U. S. C. § 1821(c). On August 6, 2003, Frederick Heifner died. Pamela Siegenthaler was appointed Executrix of his estate (Docket No. 1, ¶ 33). Plaintiff's claim to the Frederick Heifner estate for reimbursement of outstanding loans on March 26, 2004 was denied (Docket No. 1, ¶ 33). Within two months of obtaining the denial, Plaintiff filed this case contesting the denial of the claim against the Heifner estate (Docket No. 1). Plaintiff seeks an award of compensatory damages plus interest on outstanding balances accrued on notes due from Defendants Flagship, Pamela Siegenthaler in her capacity as Executrix of the estate of Frederick Heifner, Thomas Winkle, Winkle Chevrolet and Steven Myers. Pamela Siegenthaler argues that this Court lacks subject matter jurisdiction over issues related to the administration of Fredrick Heifner's estate. In the alternative, Pamela Siegenthaler and Flagship seek an order compelling discovery from the Federal Reserve Bank of Cleveland, a non-party to this case. The Board of Governors seeks leave to intervene as a party in this case and the Office of the Comptroller of the Currency seeks leave to file an *Amicus Curiae*. The Federal Reserve Bank seeks an order quashing the subpoena served upon them by Defendants Siegenthaler and Flagship. Defendant Flagship seeks an order compelling discovery from Plaintiff.

## DISCUSSION

1. **Defendant Siegenthaler's Motion to Dismiss**
   *Docket No. 37*

Defendant Siegenthaler argues that the probate court has exclusive jurisdiction over all matters related to the administration of the Heifner estate and that this Court lacks subject matter jurisdiction to determine the extent of estate's liability, if any, to Oakwood Deposit. Plaintiff claims that this Court does

6

have subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and such jurisdiction is not abrogated by filing a claim against the Heifner estate in probate court.

Lack of subject matter jurisdiction is an affirmative defense that may be asserted in a motion to dismiss. *Michigan Southern Rail Road Company v. Branch & St. Joseph Counties Rail Users Association*, 287 F.3d 568, 572, 573 (6th Cir. 2002) (*citing* FED. R. CIV. P. 12(b)(1); *In re DeLorean Motor Company*, 991 F.2d 1236, 1240 (6th Cir. 1993)). Where subject matter jurisdiction is challenged pursuant to Section 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Id.* (*citing Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990)). Specifically, the plaintiff must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.' " *Id.* (*citing Musson Theatrical, Incorporation v. Federal Express Corporation*, 89 F.3d 1244, 1248 (6th Cir. 1996)). The plaintiff will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Id.*

During the court's review, the complaint is construed in a light most favorable to the plaintiff, plaintiff's well-pleaded factual allegations are accepted as true and a determination is made as to whether the plaintiff can prove no set of facts supporting his or her claims that would entitle him or her to relief. *Id.* (*citing Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404, 408 (6th Cir. 1997).

The issue before this Court is whether there is a basis for federal subject matter jurisdiction in this case. 28 U.S.C. § 1331 provides that the "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* (*citing Louisville & Nashville R.R. Co. v. Mottley*, 29 S. Ct. 42, 43 (1908)). Accordingly, a case arises under federal law, for purposes of Section 1331, when it is apparent from the face of the plaintiff's complaint either that the

7

plaintiff's cause of action was created by federal law, *Id.* (*citing Mottley*, 29 S. Ct. at 43); or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action. *Id.* (*citing Gully v. First National Bank*, 57 S. Ct. 96, 97-98 (1936); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 103 S. Ct. 2841, 2855-2856 (1983)).

It is a general and well-settled rule that federal courts lack probate jurisdiction and cannot administer a decedent's estate. *Firestone v. Galbreath*, 976 F.2d 279, 282-283 (6th Cir. 1992) (*citing Markham v. Allen*, 66 S. Ct. 296 (1946)). Federal courts, however, do have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.
*Id.* (*citing Markham*, 66 S. Ct. at 337).

Plaintiff brings this suit to recover assets they allege belong to Oakwood Deposit. The Magistrate finds that Plaintiff's cause of action was created by federal law; consequently, the Court has subject matter jurisdiction. The Court need not assume general jurisdiction of the probate court or control of the property to establish Plaintiff's claims, if any, against the Heifner's estate. Thus, Defendant Siegenthaler's Motion to Dismiss on the basis that subject matter jurisdiction does not exist is denied.

2.  **Defendants Siegenthaler and Flagship's Motion to Compel Discovery from the Federal Reserve Bank and the Federal Reserve Bank's Motion to Quash Subpoena**
    *Docket Nos. 43 & 48*

Pursuant to FED. R. CIV. P. 45, Defendants Siegenthaler and Flagship issued a subpoena commanding that the Federal Reserve Bank produce any documents relating to the actual or possible check

kiting schemes at Oakwood Bank. The Federal Reserve Bank filed a timely objection to the inspection or copying of all designated materials claiming that such documents are the property of the Board of Governors; consequently, the Federal Reserve Bank is prohibited from producing such information without authorization from the Board. Defendant Siegenthaler and Flagship seek an order compelling production of the documents and the Federal Reserve Bank seeks an order quashing the subpoena. In the alternative, the Federal Reserve Bank claims that the information requested is subject to the bank examination privilege.

A person commanded to produce and permit inspection and copying may serve upon the party or attorney designated in the subpoena, a written objection to inspection or copying of any or all of the designated materials. If the objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court which issued the subpoena. If the objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded. FED. R. CIV. P. 45(c) (2)(B). On timely motion, the court issuing the subpoena shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter. FED. R. CIV. P. 45(c)(3)(A) (iii).

The reports that Defendants Flagship and Siegenthaler seek are deemed confidential supervisory information[2] prepared by or on behalf of the Federal Reserve Board. 12 C. F. R. § 261.2(c) (1) (2005).

---

[2] Confidential supervisory information means: (I) Exempt information consisting of reports of examination, inspection and visitation, confidential operating and condition reports, and any information derived

9

The Secretary of the Board is the official custodian of all Board records, including records that are in the possession or control of the Board, any Federal Reserve Bank, or any Board or Reserve Bank employee. 12 C. F. R § 261.3(a) (2005). The regulations provide that confidential supervisory information is both confidential and privileged. 12 C. F. R. § 261.22 (2005). The regulations further provide all confidential supervisory information made available shall remain the property of the Board. 12 C. F. R. § 261.22 (e) (2005). Persons seeking such confidential supervisory information must file a written request with the Board's general counsel showing that the need for confidential information outweighs the need to maintain confidentiality and that disclosure is consistent with the supervisory or regulatory responsibilities and policies of the Board. 12 C. F. R. § 261.22 (a), (b) (2005).

The Magistrate finds that Defendants Flagship and Siegenthaler are requesting confidential or other protected matters which are the property of the Board. Defendants have failed to demonstrate that they made an administrative request to the Board for documents that are the subject of the subpoena. Accordingly, the Motion to Quash is granted and the Motion to Compel Production by the Federal Reserve Bank of any documents relating to the actual or possible check kiting schemes at Oakwood Bank is denied.

3. **Defendants Flagship and Siegenthaler's Motion to Compel Discovery from Plaintiff**
   *Docket No. 44*

Defendants Flagship and Siegenthaler filed a Motion to Compel Plaintiff to produce documents identified on the FDIC's Privilege Log. Counsel certified that the parties are unable to resolve this issue

---

from, related to, or contained in such reports; (ii) Information gathered by the Board in the course of any investigation, suspicious activity report, cease-and-desist orders, civil money penalty enforcement orders, suspension, removal or prohibition orders . . . .12 C.F. R. § 261.2 (2005).

without court intervention (Docket No. 44, Exhibit 2).

The Privilege Log includes a request for (1) the transcript of interviews with Mark Steven Miller, Vicki Ankey, Winkler's Accounting Manger, and Pamela Siegenthaler conducted by the Federal Bureau of Investigation (FBI); (2) a report of the failure of the Oakwood Deposit Company prepared by the FBI and (3) a suspicious activity report (SAR) completed by Liberty.  Plaintiff contends that these documents are not FDIC documents.  In the alternative, Plaintiff claims that such documents are protected by the law enforcement privilege.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter of the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).  FED. R. CIV. P. 26(b).

Plaintiff contends that the SAR is not subject to discovery under Rule 26 as it protected by the Bank Secrecy Act.  Financial institutions are required by law to file a SAR, but are prohibited from disclosing whether a SAR has been filed or the information contained therein.  12 C.F.R. § 353.3(a)(2005).  SARs are confidential and any financial institution subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to (1) produce the SAR; (2) provide any information that would disclose that a SAR has been prepared or filed and (3) notify the appropriate FDIC regional office of the request.  12 C. F. R. § 353.3(g) (2005).

The Magistrate cannot compel the production of the SARs and Plaintiff is prohibited from providing any information that a SAR has been prepared or filed. Further, the Magistrate finds that if the FBI conducted investigations reasonably calculated to uncover materials responsive to the failure of Oakwood, such materials are the property of the FBI. The obligation to produce such materials from the FBI files will not be imposed on Plaintiff. Accordingly, Defendants' Motion to Compel Discovery of the transcript of interviews with Mark Steven Miller, Vicki Ankey, and Pamela Siegenthaler, the FBI's report of the failure of the Oakwood Deposit Company and Liberty Mutual's SAR is denied.

4. **The Board of Governor's Motion to Intervene as a Party**
   *Docket No. 46*

The Board of Governors seeks leave to intervene in this case for the limited purpose of opposing Defendant Flagship's Motion to Compel Production of Documents from the Federal Reserve Bank or in the alternative, to argue that the documents requested are protected by the Federal Reserve Bank's examination privilege. The Board of Governors contends that it owns the documents requested, not the Federal Reserve Bank. Plaintiff supports such request for intervention (Docket No. 50). However, Defendants Flagship and Siegenthaler contend that the Board of Governors has not demonstrated that it has a substantial interest in this litigation and the bank examination privilege has been waived by initiation of this case. Accordingly, the Board of Governors has no basis for intervention in this case.

Upon timely application anyone shall be permitted to intervene in an action when (1) a statute of the United States confers an unconditional right to intervene or (2) the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect their

interest, unless the applicant's interest is adequately represented by existing parties. FED. R. CIV. P. 24.

As a practical matter, the Board of Governors' intervention at this time, is inconsequential to the Court's determination of the propriety of Defendant Flagship's Motion to Compel Production of Documents from the Federal Reserve Bank. The Magistrate has already denied Defendants' Motion to Compel and granted the Federal Reserve Bank's Motion to Quash the subpoena; consequently, the Board of Governors need not intervene for the sole purpose of opposing such Motion. The Motion to Intervene is denied as moot.

**5.    OCC's Motion for Leave to file an *Amicus Curiae* In Support of Plaintiff's Opposition to Defendant's Motion to Compel**
*Docket No.65*

OCC, a bureau of the Treasury Department, is a federal agency responsible for chartering, supervising and regulating any and all banks organized under the National Bank Act (Docket No. 65); 12 U. S. C. § 1 (2005). OCC regulates reports of suspicious activities, including the SAR filed by Liberty. OCC argues in the proposed *Amicus Curiae* brief that production of the SAR would impede the enforcement of OCC's regulations, undermine the protections afforded banks when an SAR is made and weaken the cooperative efforts of federal agencies, financial institutions and law enforcement (Docket No. 65).

The denial of OCC's Motion has the same practical effect as the denial of the Motion to Intervene. The rationale suggested by OCC for maintaining the confidentiality of the SAR prepared by Liberty has already been adopted by this Court. Thus, OCC's arguments, while supportive, are not required to assist the Court in determining the extent of discovery at this time. OCC's Motion for Leave to file an *Amicus*

13

*Curiae* brief is denied.

## CONCLUSION

For these reasons, Defendant Siegenthaler's Motion to Dismiss is denied; Defendant Flagship and Siegenthaler's Motion to Compel Discovery from the Federal Reserve Bank is denied and the Federal Reserve Bank's Motion to Quash Subpoena is granted; Defendant Flagship's Motion to Compel Discovery from Plaintiff is denied; the Board of Governor's Motion to Intervene is denied as moot; and OCC's Motion for Leave to file an *Amicus Curiae* brief is denied.

IT IS SO ORDERED.

/s/Vernelis K. Armstrong
Vernelis K. Armstrong
United States Magistrate Judge