IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation, | : | Case No. 3:04 CV 7233 |
| Plaintiff, | : | |
| vs. | : | |
| Flagship Auto Center, Inc., *et al.*, | : | MEMORANDUM DECISION AND ORDER |
| Defendants. | : | |

The parties consented to have the undersigned Magistrate enter judgment in this case seeking restitution and recovery from the default of a promissory note pursuant to 12 U. S. C. § 1819. Pending is a Motion for Attorney Fees filed by Flagship Auto Center f.k.a. Flagship GM Center and the Estate of Frederick Heifner (the Flagship Defendants) (Docket No. 167) and the Federal Deposit Insurance Corporation's (FDIC) Opposition (Docket No. 171). For the reasons that follow, the Flagship Defendants' Motion for Attorney Fees is denied.

## FACTUAL BACKGROUND

Plaintiff, in its capacity as guarantor for deposits to all banks and savings associations, insured Oakwood Depository Company, an Ohio banking institution with its principal place of business in Oakwood, Ohio (Docket No. 1, ¶s 1, 2, 3). Steven Myers Auto Sales later known as Flagship Auto

Center, an auto sales business in Kenton, Ohio, was overseen by a Board of Directors including the president and majority stockholder Frederick Heifner, Frederick Heifner's daughter, Pamela Siegenthaler and Flagship Auto Sales' officer and agent, Steven L. Myers (Docket No. 93, pp. 33 & 38, Docket No. 100, Exhibit 34, ¶ 12; Docket No. 1, ¶s 5 & 9). Defendant Winkle Chevrolet-Olds-Pontiac (WCOP), an Ohio corporation conducting business in Paulding, Ohio, employed Defendant Thomas J. Winkle as officer and agent (Docket No. 1, ¶s 7, 8).

During 2001, Defendants Winkle and Myers engaged in transactions which involved recording the sale of vehicles between Defendants WCOP and Steven Myers Auto Sales that were not actually sold (Docket No. 1, ¶s 14-16). Defendant WCOP had an account at Oakwood and Defendant Steven Myers Auto Sales had an account at Liberty Bank (Docket No. 1, ¶ 17). Checks were written on the Oakwood account at the direction of Defendant Winkle and checks were written on the Liberty Bank account at the direction of Defendant Myers (Docket No. 1, ¶ 15). Checks drawn on the Liberty Bank account were deposited into the account at Oakwood. Before the check was presented for payment and cashed, checks were deposited in the account on which the check was drawn (Docket No. 1, ¶ 16).

On November 21, 2001, Defendant Winkle deposited $1,963,818 in checks in the Oakwood account that were written on the Liberty Bank account (Docket No. 1, ¶ 23). On November 23, 2001, Defendant Winkle deposited $939,216 in checks written on the Liberty account into the Oakwood account (Docket No. 1, ¶ 24). The aggregate amount of checks written by Defendant Myers on the Liberty account and deposited by Defendant Winkle in the Oakwood account which were returned to Oakwood as unpaid by Liberty was $8,054,264 (Docket No. 1, ¶ 25).

Oakwood presented the unpaid checks written by Defendant Winkle to the Liberty Bank which paid $360,198 of the outstanding checks (Docket No. 1, ¶ 21). Liberty Bank dishonored those checks

presented for payment that were unpaid (Docket No. 1, ¶s 19, 23). None of the checks written on the Oakwood account were returned unpaid upon presentment to Oakwood. Consequently, the proceeds from the paid checks were in the Liberty bank account (Docket No. 1, ¶ 26). In the final analysis, it was determined that from January through November 2001, checks exceeding $140,000,000 were written on the two accounts in the transactions between Oakwood and Liberty Bank (Docket No. 1, ¶s 17, 18).

On November 5, 2001, Oakwood loaned Defendants Winkle and WCOP $500,000. The amount of this loan that was unpaid totaled $490,000 (Docket No. 1, ¶ 29). Between December 5, 2001 and January 8, 2002, Oakwood loaned Defendant Winkle $3,023,547.10 to cover account overdrafts and operating expenses (Docket No. 1, ¶ 34). Frederick Heifner paid $523,997.13 to satisfy outstanding personal or business loans with Liberty Bank from his personal account at the Hardin County Bank (Docket No. 1, ¶s 31, 32).

The Superintendent of Financial Institutions for the State of Ohio closed Oakwood on February 1, 2002, and appointed Plaintiff as a receiver. On August 6, 2003, Frederick Heifner died and Pamela Siegenthaler was appointed Executrix of his estate (Docket No. 1, ¶ 33). Plaintiff filed this lawsuit upon Pamela Siegenthaler's denial of its request for reimbursement of outstanding loans (Docket No. 1, ¶ 33). This Court dismissed the Flagship Defendants and the Heifner estate as parties and entered judgment against Defendants Myers and Winkle for $8,054.264.04 plus applicable interest (Docket Nos. 145 and 161). The United States Court of Appeals for the Sixth Circuit dismissed Plaintiff's appeal. Within thirty days after this dismissal, Plaintiff filed a request for an award of attorney fees under the Equal Access to Justice Act (EAJA), codified pursuant to 28 U. S. C. § 2412 *et. seq*.

## **ATTORNEY FEE STANDARD OF REVIEW**

In pertinent part, the EAJA provides:

3

>Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (Thomson Reuters/West 2008).

Under the EAJA, three criteria must be met before an award of attorneys' fees and costs is granted: (1) the fees must be incurred in a civil action brought against the government; (2) the party seeking fees must have been the prevailing party; and (3) the position of the government must *not* have been substantially justified. *Haiges v. Commissioner of Social Security*, 2008 WL 5412898, *2 (S. D. Ohio 2008) (*citing Delta Engineering v. United States,* 41 F.3d 259, 261 (6th Cir. 1994)). A prevailing party must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Id.* (*citing Hensley v. Eckerhart,* 103 S. Ct. 1933, 1939 (1983) (citations omitted)). A party's victory need not be obtained by final adjudication of a lawsuit's merits. *Id.* It is enough that the lawsuit acted as a 'catalyst' in prompting defendants to take the desired action. *Id.* (*citing Citizens Coalition for Block Grant v. City of Euclid,* 717 F.2d 964, 966 (6th Cir. 1983)).

## **DISCUSSION**

The Flagship Defendants base their Motion for Attorney fees on Subsection 2412(d)(2)(B), arguing that Plaintiff was not substantially justified in asserting a common law theory that was superseded by the Uniform Common Code as adopted in Ohio. Plaintiff objects to an award of attorney fees and costs made under EAJA, claiming that (1) it is not considered an agency of the United States for purposes of EAJA, (2) it is not liable for the wrongdoings of the depository institutions it regulates and (3) it can dispense assets of the receivership, not federal agency funds.

4

The fee-shifting paradigm found in 28 U. S. C. § 2412(d) provides an independent basis for an award of attorneys' fees where certain prerequisites to eligibility must be met: (1) the party must prevail against the United States or an agency of the United States in a non-tort civil action, (2) the net worth of a prevailing corporation, unit of local government, or organization, does not exceed seven million dollars or the net worth of an individual does not exceed two million dollars and (3) the position of the United States cannot be substantially justified.

The answer to the Plaintiff's inquiry as to whether it qualifies as a federal agency when it is acting in its capacity as a receiver of a failed bank is case dispositive. The FDIC operates in two distinct capacities: in its corporate form as insurer of deposits and as the receiver of failed institutions. *Perpetual Financial Corporation v. United States,* 61 Fed. Cl. 126, 145 (Fed. Cl. 2004) (*citing* 12 U.S.C. § 1821a). When acting in its corporate capacity, the FDIC is an agency of the United States. *Id.* (*citing Statesman Savings Holding Corporation v. United States,* 41 Fed. Cl. 1, 13 (1998)).

When acting in its receivership capacity, the FDIC is not an agency of the United States. *O'Melveny & Myers v. FDIC,* 114 S. Ct. 2048, 2053 (1994). In its capacity as receiver, FDIC liquidates and winds up the affairs of an insured federal depository institution by the appropriate federal banking agency. 12 U. S. C. § 1821(c)(2)(A)(ii) (Thomson Reuters/West 2008). In the course of winding up the affairs of the failed bank, FDIC succeeds to all rights and liabilities of the bank. 12 U. S. C. §1821(d)(2)(A) (Thomson Reuters/West 2008). FDIC performs all of the functions of the named bank and marshals the assets of the failed bank, distributing them to the bank's depositors and other creditors. 12 U. S. C. §1821(d)(2) (B) and (d)(11) (Thomson Reuters/West 2008).

Plaintiff's posture in this case is that of a distinct legal entity independent of its role as a regulator. Plaintiff did not pursue the government's interest as a bank insurer. Plaintiff marshaled Oakwood's assets

5

and distributed funds for the benefit of Oakwood depositors and creditors. Even if the Flagship Defendants are considered the prevailing parties, they did not prevail against the United States or an instrumentality of the United States. Since the Flagship Defendants fail to satisfy the first prong of the fee-shifting procedure, the Magistrate need not address the Flagship Defendants' net worth or whether the United States' position was substantially justified.

## **CONCLUSION**

The Flagship Defendants failed to demonstrate entitlement to an award of attorney fees under Section 2412; consequently, their Motion for Attorney Fees is denied.

So ordered.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   February 25, 2009